BARNES, J.,
for the Court:
¶ 1. Robert Buchanan was indicted for aggravated assault on a peace officer. A jury in the Harrison County Circuit Court found him guilty of misdemeanor simple assault. Buchanan now appeals, contending that the trial court erred in granting a lesser-included-offense jury instruction on misdemeanor simple assault. Finding no error, we affirm.
STATEMENT OF THE FACTS AND PROCEDURAL HISTORY
¶ 2. On the night of July 5, 2007, Gulf-port police officers Paul Podlin, Jason Brandt, and Joey West were transporting two prisoners in an unmarked vehicle from the Gulfport police station to the Harrison County Jail. While traveling on Highway 49, the officers observed a man, later identified as Buchanan, standing on the edge of the curb near the intersection of Highway 49 and Middle Drive “wildly” and “aggressively” swinging a baseball bat at passing vehicles. However, Buchanan never actually struck any of the vehicles.
¶ 3. Officer Podlin pulled over to assess the situation. The officers were not in uniform; they were wearing cargo pants and polo shirts with cloth badges. While Officer Brandt stayed in the unmarked vehicle with the prisoners and notified dispatch to send a marked unit, Officers Pod-lin and West walked toward Buchanan and attempted to make conduct with him. Officer West described Buchanan as having an agitated demeanor, “as if he were looking for some sort of a fight.” Officer Podlin retrieved his taser, while Officer West provided “lethal cover” with a gun. Officer Podlin told Buchanan several times to drop the bat and step away from it, or he would tase Buchanan. While Officer Podlin was still ordering Buchanan to drop the bat, Officer Ryan Stachura arrived on the scene in a marked police vehicle. Officer Stachura also took out his taser because Buchanan appeared defiant. Buchanan finally complied and dropped the bat.[1]
¶ 4. However, Officer Stachura testified that Buchanan did not move away from the bat more than a foot and “kept shifting his eye movements from [Officer Podlin] and [the other officers] to the bat, from the bat back up.” Officer Podlin approached to remove the bat from the area, but Buchanan again reached down for the bat. Officer Podlin then deployed his taser to subdue Buchanan, but it had little effect on him. A taser usually incapacitates a person with nonlethal force, but Buchanan was still able to “flail” his arms and did not fall to the ground. Officer Stachura said it was as if the taser were not working properly. Buchanan then appeared to break the taser leads and pull the darts out. Therefore, Officer Stachura also tased Bu *814 chanan, but Buchanan was still not subdued. Instead, Buchanan immediately pulled the taser darts out and began “very rapid movements.” Buchanan grabbed the bat and raised it high above his head, charging at Officer Podlin. When Buchanan came within a few yards of Officer Podlin, he fired his handgun at Buchanan. Officer West, believing Officer Podlin was in danger because Buchanan was “running like he was attacking” Podlin, also fired his weapon at Buchanan, striking him in the abdomen area. Buchanan then dropped the bat and fell to the ground. Medics were called to the scene, and Buchanan was taken to the hospital. Cameras attached to both Officer Podlin’s and Officer Stachura’s tasers recorded the incident, and the tapes were later entered into evidence.
¶ 5. A Harrison County grand jury indicted Buchanan for aggravated assault on a peace officer in violation of Mississippi Code Annotated section 97 — 3—7(2)(b) (Rev. 2006). At the conclusion of Buchanan’s trial, the jury was instructed on aggravated assault on a peace officer. The trial court also allowed the State to submit jury instructions on the lesser-included offenses of simple assault on a peace officer and misdemeanor simple assault, over the objection of defense counsel. The jury found Buchanan guilty of neither aggravated assault on a peace officer nor simple assault on a peace officer, but of misdemeanor simple assault. Buchanan received a six-month suspended sentence and now appeals.
ANALYSIS OF THE ISSUE
¶ 6. Buchanan raises one issue: whether the trial court erred in allowing the State to instruct the jury on the lesser-included offense of misdemeanor simple assault.
¶ 7. The State argues that this issue is procedurally barred because the defense did not contemporaneously object to jury instruction S-5A on misdemeanor simple assault. To support its contention, the State references the following dialog that occurred between the prosecution and defense counsel during the State’s submission of the jury instruction:
[THE STATE]: Your Honor, they have argued that the defendant couldn’t have possibly known that they were law enforcement officers. They spend a great deal of time upon the fact that their insignia and things of that nature, they couldn’t be readily identified as police officers, and I anticipate argument that Mr. Buchanan didn’t know he was dealing with police officers, and therefore we feel that this instruction is appropriate as well.
THE COURT: All right.
[THE DEFENSE]: Judge, they’re getting three bites at the apple. They want a lesser included. If you have to give them a lesser included, give them this one [Jury instruction S-5A on misdemeanor simple assault] and not the other one [Jury instruction S-4A on simple assault of a peace officer],
(Emphasis added.) It is well established that failure to object timely to a jury instruction at trial waives the issue on appeal. Peterson v. State, 37 So.3d 669, 675 (¶ 29) (Miss.Ct.App.2010). However, we find no merit to the State’s argument of waiver. We cannot say from this dialog at the jury-instruction conference that defense counsel was not objecting to jury instruction S-5A. The State further argues that even if we consider this a contemporaneous objection, the issue is nonetheless barred because “[a]n objection on one [specific] ground waives all other grounds,” and defense counsel’s remarks were merely an objection to the State’s receiving two lesser-included-offense jury *815 instructions, and not specifically the instruction on simple misdemeanor assault. See Swington v. State, 742 So.2d 1106, 1110 (¶ 9) (Miss.1999). Finally, the State interprets this dialog to mean that the defense counsel actually requested that instruction S-5A be granted, and “[a] party cannot complain of a jury instruction granted at its own request.” See Bridges v. Kitchings, 820 So.2d 42, 48 (¶ 19) (Miss.Ct.App.2002). We are not convinced by any of these arguments. We now turn to the merits of the issue.
¶ 8. When a party claims that he is entitled to a lesser-included-offense instruction, the standard of review is de novo, as it is a question of law. Downs v. State, 962 So.2d 1255, 1258 (¶ 10) (Miss.2007). The law on lesser-included-offense instructions is well settled. “To warrant the lesser-included offense instruction, a defendant must point to some evidence in the record from which a jury could reasonably find him not guilty of the crime with which he was charged and at the same time find him guilty of a lesser-included offense.” Goodnite v. State, 799 So.2d 64, 69 (¶ 24) (Miss.2001) (citing Toliver v. State, 600 So.2d 186, 192 (Miss.1992)). Furthermore:
A defendant does not have the power to block lesser-included offense instructions. “[The Mississippi Supreme Court has] recognize[d] in certain cases, as a matter of trial strategy, defense counsel may wish to have the. case put to the jury on an all or nothing basis, the jury’s alternatives being to find the defendant guilty as charged in the indictment or acquitted. Our law, however, allows the prosecution to request and obtain lesser-included offense instructions, as it does the defense.” The principal requirement for allowing a lesser-included-offense instruction is that there be evidence to support it.
Hester v. State, 841 So.2d 158, 160 (¶ 3) (Miss.Ct.App.2002) (quoting Harveston v. State, 493 So.2d 365, 375 (Miss.1986)). In order to decide whether a proposed jury instruction is supported by the evidence, “we must consider all of the evidence in the light most favorable to the party requesting the instruction. That party must also be given the benefit of all favorable inferences that may reasonably be drawn from the evidence.” Booze v. State, 964 So.2d 1218, 1221 (¶ 14) (Miss.2007) (quoting Jones v. State, 798 So.2d 1241, 1254 (¶ 40) (Miss.2001)). Moreover, a trial court “should err on the side of inclusion rather than exclusion” for proposed jury instructions. Id. The supreme court has long held that “only where the evidence could only justify a conviction of the principal charge should a lesser offense instruction be refuted.” Jones v. State, 798 So.2d 1241, 1253 (¶ 38) (Miss.2001) (quoting Taylor v. State, 577 So.2d 381, 383 (Miss.1991)). “A lesser-included offense instruction must be granted where a reasonable juror could not on the evidence exclude the lesser-included offense beyond a reasonable doubt.” Id. (quoting Taylor, 577 So.2d at 383-84). Another factor “to be considered is the disparity in maximum punishments between the offenses. A great disparity is a factor in favor of giving the lesser included offense instruction.” Id.
¶ 9. Buchanan argues the trial court erroneously granted the jury instruction on misdemeanor simple assault. Buchanan also mentioned in his brief that it was error for the trial court to grant the other lesser-included jury instruction of simple assault on a peace officer. While we find no error with the grant of either instruction, we shall focus our analysis on the jury instruction for misdemeanor simple assault, as this is the issue Buchanan formally raises in his brief. That said, a comparison of the jury instructions on the *816 three offenses (the principal offense and its two lesser-included offenses) is in order.
¶ 10. On the principal offense of aggravated assault on a peace officer,[2] jury instruction S-1A states:
If you find from the evidence in this case beyond a reasonable doubt that:
1. On or about July 5, 2007 ...
2. the Defendant ... did unlawfully, feloniously and knowingly,
3. attempt to cause bodily injury to Paul Podlin, with a deadly weapon or other means likely to produce death or serious bodily harm, to-wit: by swinging a baseball bat, a deadly weapon, at ... Podlin,
4. and not in necessary self-defense,
5. at the time when Paul Podlin was a law enforcement officer employed by the Gulfport Police Department, and acting within the scope of his duty and office, then you shall find the defendant ... guilty of Aggravated Assault on a Peace Officer.
For the lesser-included offense of simple assault on a peace officer,[3] the jury was instructed in S-4A that:
If you find from the evidence beyond a reasonable doubt that:
1. On or about July 5, 2007 ...
2. the Defendant ... did unlawfully, willfully and feloniously attempt by physical menace to put Paul Podlin in fear of imminent serious bodily injury, to wit: by charging at ... Podlin in a threatening manner,
8. and not in necessary self-defense
4. at a time when ... Podlin was a law enforcement officer employed by the Gulfport Police Department and acting within the scope of his duty and office, then you shall find the Defendant ... guilty of Simple Assault on a Peace Officer.
Jury instruction S-5A for the lesser-included offense at issue in this case, misdemeanor simple assault,[4] reads:
If you find from the evidence beyond a reasonable doubt that:
1. On or about July 5, 2007 ...
2. the Defendant ... did knowingly, purposely or recklessly
3. attempt to cause bodily injury to Paul Podlin,
4. not in necessary self-defense, then you shall find the Defendant ... guilty of Misdemeanor Simple Assault.
The first difference between the elements of the principal charge of aggravated assault and the two lesser-included offenses is whether the baseball bat can only be considered a deadly weapon. The second difference between the principal charge and the jury instruction on misdemeanor simple assault is whether Podlin could be identified as a peace officer at the time of the incident. If so, then the lesser-includ *817 ed-offense instruction on misdemeanor simple assault was erroneously granted.
¶ 11. We find that a reasonable juror could not exclude the evidence on misdemeanor simple assault beyond a reasonable doubt. There is clearly evidence that Buchanan attempted to cause bodily injury to Officer Podlin by charging at him with the baseball bat raised over his head once he had been tased the first time, and not necessarily in self-defense.
¶ 12. Regarding whether the baseball bat can only be considered a deadly weapon, the question of whether an instrument used in an assault is a deadly weapon is a question of fact for the jury to determine. Hutchinson v. State, 594 So.2d 17, 19 (Miss.1992) (citing Jackson v. State, 594 So.2d 20, 24 (Miss.1992); Shanklin v. State, 290 So.2d 625, 627 (Miss.1974)). The jury apparently deemed that the bat was not a deadly weapon in this instance since they found Buchanan guilty of simple assault. While it is true, as the defense points out, that throughout trial the State contended the baseball bat was a deadly weapon, this fact was not stipulated to by the parties. The trial transcript indicates that the bat was never described as anything more than a “baseball bat” or a “large club,” and it appears to be made of metal as shown in the two videos’ photographic stills, which were entered into evidence.[5] While the Mississippi Supreme Court and this Court have held that a baseball bat may be considered a deadly weapon, it is typically a question of fact for the jury. See Westbrook v. State, 29 So.3d 828, 836 (¶ 33) (Miss.Ct.App.2009) (emphasis added) (“[A] baseball bat can be deemed a deadly weapon, especially when used in the manner as it was used by [the defendant],” by striking the victim three times in the head and killing him.); Adams v. State, 726 So.2d 1275, 1278 (¶ 6) (Miss.Ct.App.1998) (citing Griffin v. State, 540 So.2d 17, 19 (Miss.1989)) (emphasis added) (“A blunt instrument such as a club may constitute a dangerous weapon, and this determination is for the jury.”)
¶ 13. Buchanan cites Hutchinson as controlling authority. In Hutchinson, the defendant was indicted for aggravated assault, having cut the victim on the finger with a fillet knife. Hutchinson, 594 So.2d at 18. The trial court denied his request for a jury instruction on the lesser-included offense of simple assault. Id. at 20. The issue on appeal was whether the defendant was entitled to the jury instruction. Id. at 18. Hutchinson reiterated that the question of whether an instrument used in an assault is a deadly weapon is a question of fact for the jury to determine. Id. at 19. Because no fair-minded and properly instructed jury could have failed to find the defendant’s knife to be a deadly weapon, the supreme court held that the evidence was sufficient to support the guilty verdict of aggravated assault, and there was no error in the trial court’s denial of the instruction on simple assault. Id. at 20.
¶ 14. Buchanan also cites Brooks v. State, 18 So.3d 859 (Miss.Ct.App.2008), rev’d on other grounds by Brooks v. State, 18 So.3d 833 (Miss.2009), in support of his argument. In Brooks, the defendant was indicted on five counts of aggravated assault on a law-enforcement officer for attempting to strike several officers with a vehicle. Id. at 862 (¶ 1). Defense counsel submitted jury instructions on the lesser-included offense of simple assault on a law-enforcement officer, as well as the lesser *818 non-included offense of reckless driving for each count, but the trial court refused them. Id. at 865 (¶ 14). Regarding the simple-assault offense, this Court affirmed the trial court’s denial of the instruction because there was no evidence presented to support it. Id. at 867-68 (¶ 20). Additionally, during the jury-instruction conference, both parties agreed that a vehicle driven in a dangerous manner would be considered a deadly weapon. Id. at 867 (¶17).
¶ 15. Both Hutchinson and Brooks are distinguishable from this case in that there was no debate that the instruments used in those assaults — a fillet knife and a vehicle, respectively — were deadly weapons. Here, it is a question of fact whether the bat was a deadly weapon. As Hutchinson explains, “aggravated assault is a carbon copy of simple assault, with the exception that aggravated assault has added the words ‘with a deadly weapon.’ ” Hutchinson, 594 So.2d at 19. Depending on the “discrete facts presented, an accused on trial for aggravated assault may have the jury consider the lesser offense of simple assault,” but not necessarily in every case; it depends on “whether there is an evidentiary basis” for the lesser offense. Id. at 18. In Hutchinson, the supreme court held that, even though whether an instrument of attack in assault cases is a deadly weapon is usually a question for the jury, “no fair-minded and properly instructed jury could fail to find [the Defendant’s] knife was a deadly weapon.” Thus, the trial court’s refusal of the lesser-offense instruction was proper. Id. at 20. Here, a fair-minded jury could (and did) find the bat was not a deadly weapon. Similarly, in Brooks, the parties agreed the instrument, a vehicle, was a deadly weapon; thus, a jury instruction for simple assault would have been improper. Here, there was no such agreement between the parties that a baseball bat was a deadly weapon; it was a fact issue for the jury to determine, so it was proper for the jury to receive an instruction on the lesser offenses as there was an evidentiary basis for the instruction.
¶ 16. Buchanan argues that the only “important” difference between the aggravated assault instruction S-1A and instruction S-5A on lesser-included simple assault is the absence of the element “use of a deadly weapon.” We disagree. As mentioned earlier, instruction S-5A also does not require proof that Podlin was a peace officer, as does S-1A.
¶ 17. Morgan v. State, 388 So.2d 495 (Miss.1980), which is cited by the State, is instructive. In Morgan, the defendant was convicted for aggravated assault on a fireman for hitting a fireman with a pistol barrel. Id. at 496. The supreme court reversed the conviction and remanded the case because evidence at trial showed, at the time of the assault, the defendant did not recognize the fireman was acting within the course and scope of his duties. Id. at 498. The defendant, a Marine, was attempting to return to a burning building to rescue an individual, while the firemen were trying to move the crowd away from the building. Id. at 496. The record showed that the assaulted fireman had on a different type of helmet from the other firemen, and there was smoke and great confusion at the scene of the fire. Thus, the supreme court found that the defendant was only guilty of the lesser-included offense of simple assault. Id. at 498. We also note there was no discussion in Morgan about whether a pistol barrel was a deadly weapon.
¶ 18. Here, there is evidence to show Buchanan may not have realized Officer Podlin was acting within his scope and duty as a peace officer during the incident. Officers Podlin, West, and *819 Brandt did not have on their usual police uniforms; instead, they were dressed in cargo pants and polo shirts with patches on them. Additionally, they arrived on the scene in an unmarked police vehicle. Furthermore, the jury had the choice of convicting Buchanan of either simple assault of a peace officer or merely simple assault; so apparently the jury did not think Buchanan knew Officer Podlin was a peace officer.
¶ 19. Finally, in analyzing the disparity of the maximum sentences for aggravated assault on a peace officer and misdemean- or simple assault, there is a great disparity. Aggravated assault on a peace officer carries a maximum sentence of thirty years, while the maximum sentence for misdemeanor simple assault is six months in the county jail. Miss.Code Ann. § 97-3-7(l)-(2) (Rev.2006). This factor further establishes the propriety of the lesser-included-offense instruction.
¶20. In conclusion, the evidence presented at trial was not such that only a conviction on the principal charge of aggravated assault on a peace officer could be justified. Additionally, a reasonable juror could not exclude the evidence on the lesser-included-offense instruction beyond a reasonable doubt. There was ample evidence to support this lesser-included offense. Considering the evidence in the light most favorable to the State, which submitted the lesser-included-offense instruction, and giving the State the benefit of all reasonable inferences, reasonable jurors could have found, and did find, Buchanan guilty of misdemeanor simple assault. Therefore, the trial court did not err in granting this jury instruction. Accordingly, we affirm Buchanan’s conviction and sentence.
¶ 21. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY OF CONVICTION OF MISDEMEANOR SIMPLE ASSAULT AND SENTENCE OF SIX MONTHS IN THE CUSTODY OF THE SHERIFF OF HARRISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., GRIFFIS, P.J., MYERS, ISHEE AND ROBERTS, JJ„ CONCUR. MAXWELL, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. IRVING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY CARLTON AND RUSSELL, JJ.

. In his original statement, Officer Podlin stated that Buchanan never dropped the bat before he tased him. Upon watching a video of the incident, however, Officer Podlin saw that Buchanan actually did drop the bat before being tased; so Officer Podlin changed his testimony accordingly.

. To prove the crime of aggravated assault on a peace officer, the State must prove the defendant "attempts to cause or purposely or knowingly causes bodily injury to [a peace officer] with a deadly weapon or other means likely to produce death or serious bodily harm.” Miss.Code Ann. § 97 — 3—7(2)(b).

. For the crime of simple assault on a peace officer, the State is required to show that the defendant "attempts by physical menace to put [a peace officer] in fear of imminent serious bodily harm.” Miss.Code Ann. § 97-3-7(1 )(c) (Rev.2006).

.To prove the crime of misdemeanor simple assault, the State must prove that the defendant "attempts to cause or purposely, knowingly or recklessly causes bodily injury to another.” Miss.Code Ann. § 97 — 3—7(1)(a) (Rev. 2006).

. In his brief, Buchanan refers to the bat as a "Pee Wee league baseball bat”; however, there is nothing in the record to support this description, and the bat was not transferred to this Court with the record.